# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **BOB POST,** | ) | CASE NO. |
| | ) | |
| Plaintiff, | ) | JUDGE |
| | ) | |
| v. | ) | |
| | ) | |
| **CITY OF MUNROE FALLS,** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **JAMES ARMSTRONG** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **JERRY HUGHES** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **THOMAS KOSTOFF** | ) | **COMPLAINT** |
| | ) | |
| Defendants. | ) | **JURY DEMAND ENDORSED HEREON** |

For his Complaint against Defendants City of Munroe Falls ("Munroe Falls"), James Armstrong ("Armstrong"), Jerry Hughes ("Hughes"), and Tom Kostoff ("Kostoff"), Plaintiff Bob Post ("Post") states as follows:

## PARTIES

1. Post is an adult individual residing in Summit County, Ohio, and is a former employee of the City of Munroe Falls Police Department.

2. Munroe Falls is a city located in Summit County, Ohio, and operates the Munroe Falls Police Department.

1

3. During all times relevant to this Complaint, Armstrong was employed by Munroe Falls as its Mayor. Post brings this action against Armstrong in his official capacity as well as his personal capacity.

4. During all times relevant to this Complaint, Hughes was employed by Munroe Falls as its Police Chief. Post brings this action against Hughes in his official capacity as well as his personal capacity.

5. During all times relevant to this Complaint, Kostoff was employed by Munroe Falls as its Law Director. Post brings this action against Kostoff in his official capacity as well as his personal capacity.

## JURISDICTION AND VENUE

6. As this case raises issues of federal law, jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331.

7. All allegations contained in this Complaint occurred in Summit County, Ohio. Accordingly, Venue is proper in this District pursuant to 28 U.S.C. § 1391(c)(2).

## FACTS

8. Munroe Falls hired Post as a Reserve Police Officer in 1998.

9. Post was promoted three times in the course of his twenty-year tenure with Munroe Falls: first to the position of Part-Time Police Officer, then to the position of Full-Time Police Officer, and subsequently to the position of Police Sergeant.

10. Post served Munroe Falls as Sergeant through 2018 with distinction, and was formally recognized on numerous occasions for meritorious service.

11. In Fall of 2017, Munroe Falls' City Council was preparing to vote on three collective bargaining agreements between the city and three different bargaining units within the Munroe Falls Police Department.

12. The police union contracts under consideration were subject to public comment and were discussed publicly at a November 21, 2017 city council meeting.

13. Post was in attendance at the November 21, 2017 meeting.

14. During the meeting, a City Councilman asked Post to share his opinion of the proposed contracts.

15. Post declined to comment during the meeting.

16. Several days later, a reporter from the Stow Sentry newspaper contacted Post and asked Post to share his opinion.

17. In response to the reporter's inquiry, Post stated that he opposed certain proposed contract terms that would expand the part-time police force.

18. Post was not on duty at the time of his conversation with the reporter.

19. On November 30, 2018, the Stow Sentry Newspaper published an article which shared Post's response to the reporter's inquiry. The article was published under the headline "Police Sergeant Voices Objection to Contract Proposal."

20. Upon information and belief, Armstrong took great offense to Post's opinion.

21. On December 3, 2017, Armstrong saw Post parked in his vehicle in public on Post's day off.

22. Shortly after the confrontation, Armstrong accused Post of misconduct, and further directed that Post be suspended while he underwent a fitness for duty examination.

23. Upon information and belief, the Summit County Sheriff's Office investigated the misconduct alleged by Armstrong and promptly determined that Post did not violate any rules or regulations. Nevertheless, Post remained on a suspended status and unable to work while his fitness for duty examination was pending.

24. In or about late March or early April of 2018, the results of Post's fitness for duty examination were completed, and showed that Post was fully fit for duty.

25. Not satisfied with the four-month suspension of Post, upon information and belief, Defendants sought an alternative means to retaliate against Post.

26. With Post's return to full-time work imminent, Defendants stated that Post's employment was nevertheless being terminated for allegedly running unauthorized background checks in the Law Enforcement Automated Database System ("LEADS").

27. In support of their claim, Defendants cited to an occasion prior to Post's suspension, in which Post accessed LEADS while dispatched to a call at a residence.

28. Although Post did indeed use LEADS in connection with the call, Post was required to use LEADS pursuant to Defendants' policy.

29. Upon information and belief, Defendants were aware that Post's use of LEADS was in accordance with police department policy.

30. Upon information and belief, Armstrong, Hughes, and Kostoff were each individually aware of the policy, but nevertheless withheld their knowledge of the policy, and knowingly published or caused to be published false statements regarding Post.

31. Furthermore, Defendants' false statements regarding Post's use of LEADS caused Post to be arrested and charged with fifth degree felony charges.

32. Although Defendants were individually and collectively aware that these false charges would terminate Post's career and could result in Post's wrongful imprisonment, Defendants continued to publish false statements regarding Post.  Upon information and belief, Defendants withheld knowledge of department policy while Post awaited trial.

33. On November 28, 2018—less than two weeks before his Post's felony trial—the Summit County Prosecutor's Office dismissed the frivolous charges against Post after learning that Post's use of LEADS was required by department policy.

34. Although the frivolous criminal charges against Post were dismissed prior to trial, the numerous false statements made regarding Post resulted in his wrongful termination. Moreover, as Post was awaiting trial on felony charges, Post was obviously unable to find other employment as a police officer.

## COUNT I
## FIRST AMENDMENT RETALIATION IN VIOLATION OF 28 U.S.C. § 1983

35. Post incorporates by reference the allegations contained in the preceding paragraphs of the Complaint as if fully rewritten herein.

36. Post has a civil, statutory, and constitutional right not to be retaliated against for engaging in activity protected by the First Amendment of the United States Constitution.

37. The police union contracts upon which Post commented were open to public comment and were discussed publicly at city council meetings.  Furthermore, at least one local newspaper publicly reported regarding the contracts and their discussion at city council meetings.

38. In responding to a request for comment from the newspaper regarding the police union contracts, Post engaged in conduct protected by the First Amendment of the United States Constitution by speaking on a matter of public concern.

39. Munroe Falls' termination of Post's employment was motivated by Post's protected conduct. Termination of employment would deter a person of ordinary firmness from engaging in protected activity.

40. Accordingly, there is a causal connection between Post's engagement in protected activity and Munroe Falls' termination of Post's employment.

41. Munroe Falls' stated reason for terminating Post's employment was a pretext for Defendants' retaliatory motive.

42. As a direct and proximate cause of Defendants' retaliation, Post has suffered and will continue to suffer severe economic and non-economic damages, all or a portion of which are likely to continue indefinitely into the future.

## COUNT II
## DEFAMATION

43. Post incorporates by reference the allegations contained in the preceding paragraphs of the Complaint as if fully rewritten herein.

44. Defendants published numerous false statements regarding Post by asserting that Post feloniously misused LEADS. Defendants made such statements despite knowing that the alleged instances of misuse were actually required of Post in the course of his work pursuant to Defendants' own policy.

45. These false statements were published to third-parties without privilege.

46. These false statements were made intentionally and with actual malice.

47. Because of the nature of these statements, they constitute defamation *per se*.

48. As a direct and proximate cause of Defendants' defamation, Post has suffered and will continue to suffer severe economic and non-economic damages, all or a portion of which are likely to continue indefinitely into the future.

## COUNT III
## MALICIOUS PROSECUTION

49. Post incorporates by reference the allegations contained in the preceding paragraphs of the Complaint as if fully rewritten herein.

50. Defendants maliciously and without probable cause charged Post with felony counts of unauthorized use of a state law enforcement database system and knowingly persisted in their wrongful effort to have Post convicted of crimes he did not commit.

51. The proceedings initiated against Post were dismissed.

52. Defendants acted maliciously or for a purpose other than bringing Post to justice.

53. As a direct and proximate cause of Defendants' wrongful conduct, Post has suffered a significant deprivation of his liberty and suffered and will continue to suffer severe economic and non-economic damages, all or a portion of which are likely to continue indefinitely into the future.

## COUNT IV
## CIVIL CONSPIRACY

54. Post incorporates by reference the allegations contained in the preceding paragraphs of the Complaint as if fully rewritten herein.

55. The actions alleged in this Complaint constitute a malicious combination involving two or more persons.

56. Retaliation in violation of 28 U.S.C. § 1983 and the First Amendment of the United States Constitution, Defamation, and Malicious Prosecution are unlawful acts that are independent from the conspiracy itself.

57. Upon information and belief, Defendants Armstrong, Hughes, and Kostoff were aware jointly aware of, and cooperated in, the course of conduct alleged in Counts I, II, and III of

this Complaint. Accordingly, the actions alleged in this complaint constitute a malicious combination involving two or more persons.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendants and that this Court grant the following:

1. For an award of compensatory and monetary damages to compensate Plaintiff for lost earnings and benefits, noneconomic damages, punitive damages, and other consequential damages in an amount to be proven at trial;

2. For an award of Plaintiff's reasonable costs and attorney fees necessarily incurred herein; and

3. For an award in favor of Plaintiff such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Christopher J. Lalak*
**NILGES DRAHER LLC**
Christopher J. Lalak (0090079)
Jeffrey J. Moyle (0084854)
614 West Superior Avenue
Suite 1148
Cleveland, Ohio 44113
Telephone 216.230.2955
Email:     clalak@ohlaborlaw.com
             jmoyle@ohlaborlaw.com

*Counsel for Plaintiff Bob Post*

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury as to all claims so triable.

                                           /s/ *Christopher J. Lalak*
                                           Christopher J. Lalak

                                           *Counsel for Plaintiff Bob Post*